IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DEANDRE BRADLEY, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 19-cv-259-NJR |
| JOHN BALDWIN and JACQUELINE LASHBROOK, | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

On July 1, 2019, Plaintiff filed a motion for preliminary injunction (Doc. 48). Defendants filed a response (Doc. 52) in opposition to the motion. Plaintiff filed a reply brief (Doc. 54). The Court held a hearing on the motion on August 27, 2019. For the following reasons, the Court now denies the motion.

## BACKGROUND

Plaintiff initially requested a preliminary injunction as part of his Complaint (Doc. 1). On March 6, 2019, an Order was entered pursuant to 28 U.S.C. § 1915A setting forth Plaintiff's claims for violations of the Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA"), and deliberate difference to his conditions of confinement. (Doc. 4). Plaintiff alleged that the cell he was housed in at Menard Correctional Center ("Menard") failed to accommodate his disability. His cell at Menard was not ADA accessible as it lacked assistive railings and his mattress, although designed to prevent

bedsores, did not fit the bed frame provided (*Id.* at pp. 2-3). Plaintiff also alleged that he was not able to shower at Menard because the shower chair was not designed to assist handicap individuals in the shower. The Court held a hearing on Plaintiff's original motion and accepted additional briefing. Before the Court issued a ruling, however, Plaintiff was transferred to Lawrence Correctional Center, and his request for injunctive relief was mooted out by the transfer (Doc. 42).

Plaintiff later transferred back to Menard (Doc. 44). Subsequently, he filed the pending motion for preliminary injunction arguing that his bed and shower were still not handicap accessible (Doc. 48). Plaintiff acknowledged that he had assistive railing in his cell (Doc. 48, p. 3). Plaintiff requested a new bedframe for his mattress, one that lacked an upper bunk as the upper bunk made it difficult for him to transfer from his bed to his wheelchair (*Id.* at p. 7). He also requested a lowered and removeable shower head and button so that it is easier to turn on the water in the shower (*Id.* at p. 8). In the alternative, Plaintiff requested to be released from custody as he only has nine months left on his prison sentence (*Id.*).

In response to Plaintiff's motion, Defendants indicated that they were in the process of providing Plaintiff with an accessible bed frame and shower (Doc. 52, p. 2). A work order was placed for engineers to install an assistive pole in the shower to access the water button and to adjust Plaintiff's bed frame so that it fits his mattress (*Id.* at p. 2, 52-1, p. 1-2). At the time the response was filed, the work to the shower was delayed due to the need to address flooding at Menard (Doc. 52-1, p. 2). Until the shower area was

modified, Defendants indicated that an ADA attendant was assigned to Plaintiff to help in the shower (*Id.*). Plaintiff, in a reply brief, refuted Defendants' contentions, arguing that the Defendants were lying to the Court about their efforts to make Plaintiff's cell and shower accessible (Doc. 54). He argued that the pole being placed in the shower was only prescribed to make transfers to the shower chair safer and not for reaching the water button (*See* Docs. 54, p. 3; 31-2). According to Plaintiff, he was actually prescribed a lowered shower head and button by Dr. Butalid rather than a vertical grab pole (*Id.* at p. 5). Plaintiff cannot climb the pole to press the water button. As to Plaintiff's ADA attendant, Plaintiff alleged that he was fired and, at the time he filed his reply, was currently in segregation (*Id.* at pp. 6 and 9). The attendant also lacked training and refused to stand in the shower and press the button for Plaintiff.

As mentioned above, the Court held a hearing on Plaintiff's motion on August 27, 2019. At the hearing, Plaintiff acknowledged that Defendants were modifying his bed and, in fact, workers arrived at his cell prior to the hearing to modify the bunk in his cell. He also acknowledged that he had been assigned a new ADA attendant, but the attendant was not allowed in the shower with him. The Court also heard testimony from Assistant Warden and ADA Coordinator Anthony Wills. At the close of the hearing, the Court ordered Defendants to submit pictures of Plaintiff's cell and shower, a video of the shower stall with the water running, and updated medical records. The Court has received those additional exhibits and reviewed them.

## ANALYSIS

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay Kane, Federal Practice and Procedure §2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). A plaintiff has the burden of demonstrating:

1. a reasonable likelihood of success on the merits;
2. no adequate remedy at law; and
3. irreparable harm absent the injunction.

*Planned Parenthood v. Commissioner of Indiana State Dept. Health*, 699 F.3d 962, 972 (7th Cir. 2012).

As to the first hurdle, the Court must determine whether "plaintiff has any likelihood of success—in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). Once a plaintiff has met his burden, the Court must weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest." *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Korte*, 735 F.3d at 665. In addition, the Prison Litigation Reform Act provides that a preliminary

injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Finally, pursuant to Federal Rule of Civil Procedure 65(d)(2), a preliminary injunction would bind only the parties, their officers or agents, or persons in active concert with the parties or their agents.

## DISCUSSION

The Court finds that Plaintiff is not entitled to a preliminary injunction at this time because he has not shown a likelihood of success on the merits. Plaintiff acknowledges that he has been provided with assistive rails in his cell. His bed has been modified to fit his mattress, and the top bunk has been removed. In Plaintiff's supplemental brief (Doc. 71), he complains only about the shower facilities in his housing unit, which he argues are not accessible. He acknowledges, however, that he has been provided a stationary shower chair and assistive railing, and that the showers now run for approximately fifteen minutes. The Court has viewed the pictures of the shower unit submitted by Defendants; they show both vertical and horizontal assistive railing, as well as a stationary shower chair. Video footage of the shower unit submitted by Defendants demonstrates that at least one shower head runs for approximately twelve and a half minutes. Anthony Wills testified at the evidentiary hearing that an ADA attendant has been assigned to the unit and the assistant helps individuals, including Plaintiff, in the shower. The attendant pushes the button to start the shower for the inmates and can re-

enter the shower to push the button again if necessary. Thus, Plaintiff has been provided with a number of accommodations to help him shower.

Plaintiff argues, however, that these accommodations are not enough. He specifically wants a removable shower head and button so that he does not have to rely on the assistance of an ADA attendant (Doc. 71, p. 3). He argues that without a removeable shower head, the water will flow over the top of his stationary shower chair, making it difficult to clean himself (*Id*. at p. 4). Plaintiff offers no evidence to support this claim that a removeable shower head and button is necessary other than his own statements as to how he prefers to shower (*Id*. at pp. 4-5). Although Plaintiff may prefer to shower in a certain way, he has not shown that the accommodations provided at Menard are unreasonable. *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012) ("Refusing to make reasonable accommodations is tantamount to denying access."). He has access to the showers, the showers have been modified in numerous ways to accommodate his needs, and he has been provided with an ADA attendant to assist him in the shower. There is no evidence in the record to suggest that a physician has recommended a removeable shower head or any other accommodation that Menard has not already provided. Further, shower logs submitted by the Defendants show that Plaintiff has been offered a shower on at least forty-seven occasions since his return to Menard in May 2019 and he has refused every shower. He will not even try to use the provided accommodations. He acknowledges that there are other inmates in wheelchairs on his wing who use the same showers as Plaintiff with the help of an attendant. Thus,

enter the shower to push the button again if necessary. Thus, Plaintiff has been provided with a number of accommodations to help him shower.

Plaintiff argues, however, that these accommodations are not enough. He specifically wants a removable shower head and button so that he does not have to rely on the assistance of an ADA attendant (Doc. 71, p. 3). He argues that without a removeable shower head, the water will flow over the top of his stationary shower chair, making it difficult to clean himself (*Id*. at p. 4). Plaintiff offers no evidence to support this claim that a removeable shower head and button is necessary other than his own statements as to how he prefers to shower (*Id*. at pp. 4-5). Although Plaintiff may prefer to shower in a certain way, he has not shown that the accommodations provided at Menard are unreasonable. *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012) ("Refusing to make reasonable accommodations is tantamount to denying access."). He has access to the showers, the showers have been modified in numerous ways to accommodate his needs, and he has been provided with an ADA attendant to assist him in the shower. There is no evidence in the record to suggest that a physician has recommended a removeable shower head or any other accommodation that Menard has not already provided. Further, shower logs submitted by the Defendants show that Plaintiff has been offered a shower on at least forty-seven occasions since his return to Menard in May 2019 and he has refused every shower. He will not even try to use the provided accommodations. He acknowledges that there are other inmates in wheelchairs on his wing who use the same showers as Plaintiff with the help of an attendant. Thus,

enter the shower to push the button again if necessary. Thus, Plaintiff has been provided with a number of accommodations to help him shower.

Plaintiff argues, however, that these accommodations are not enough. He specifically wants a removable shower head and button so that he does not have to rely on the assistance of an ADA attendant (Doc. 71, p. 3). He argues that without a removeable shower head, the water will flow over the top of his stationary shower chair, making it difficult to clean himself (*Id*. at p. 4). Plaintiff offers no evidence to support this claim that a removeable shower head and button is necessary other than his own statements as to how he prefers to shower (*Id*. at pp. 4-5). Although Plaintiff may prefer to shower in a certain way, he has not shown that the accommodations provided at Menard are unreasonable. *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012) ("Refusing to make reasonable accommodations is tantamount to denying access."). He has access to the showers, the showers have been modified in numerous ways to accommodate his needs, and he has been provided with an ADA attendant to assist him in the shower. There is no evidence in the record to suggest that a physician has recommended a removeable shower head or any other accommodation that Menard has not already provided. Further, shower logs submitted by the Defendants show that Plaintiff has been offered a shower on at least forty-seven occasions since his return to Menard in May 2019 and he has refused every shower. He will not even try to use the provided accommodations. He acknowledges that there are other inmates in wheelchairs on his wing who use the same showers as Plaintiff with the help of an attendant. Thus,

the Court finds that the accommodations provided by Menard are reasonable and do not deny Bradley access to a shower. Instead, Bradley has merely chosen not to use the accommodations provided. As such, he has not shown a likelihood of success on the merits.

## CONCLUSION

For the reasons stated in this Order, the motion for preliminary injunction (Doc. 48) is **DENIED**.

**IT IS SO ORDERED.**

**DATED: 9/12/2019**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**